FILED
2019 May-08 PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

YVONNE MOTE, as the personal representative of the estate of Shane Watkins,

Plaintiff

v.

STEVEN MOODY,

Defendant.

CASE NO. 3:17-CV-00406-LCB

**PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY**

## Introduction

Defendant has identified three experts. Two of them (Lauridson and Saloom) have submitted conclusory reports that do not satisfy the requirements of the federal rules and contain unreliable, unhelpful, and unfairly prejudicial opinions regarding how the shooting occurred that they are not qualified to give. A third expert (Ryan), while generally qualified to opine regarding police practices, should be required to stick within his lane and not opine regarding the facts, the law, or areas of scientific study (officer reaction time and crime scene reconstruction) that he is not qualified in and about which he offers no reliable or helpful opinions.

## General Principles

Federal Rule of Evidence 702, which governs the admission of expert

testimony in federal court, provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Under Rule 702 and *Daubert*, trial courts must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998) (citing *Daubert*, 509 U.S. at 589). "While there is inevitably some overlap among the basic requirements–qualification, reliability, and helpfulness–they remain distinct concepts and the courts must take care not to conflate them." *United States v. Frazier*, 387 F.3d 1244, 1260 (en banc). Additionally, "[b]ecause of the powerful and potentially misleading effect of expert evidence, *see Daubert*, 509 U.S. at 595, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." *Id.* at 1263. The burden of establishing the

requirements–qualification, reliability, and helpfulness–is on the party offering the testimony. *Frazier*, 387 F.3d at 1260.

An expert's testimony must be based on facts which enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation, as an Alabama district court explained:

> "It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408 (3rd Cir. 2002); *Lauzon*, 270 F.3d at 695 ("We would agree that where opinion testimony has no support in the record that it should be excluded."). Stated differently, an expert's opinion cannot be based upon "unsupported speculation." *Daubert*, 509 U.S. at 590; *see also Weisgram v. Marley Co.*, 169 F.3d 514, 519 (8th Cir. 1999) (providing that expert testimony is nothing more than "patent speculation" when there is "no evidence in the record" to support it.), *aff'd*, 528 U.S. 440; *see also* Fed. R. Evid. 702 advisory committee's note ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted"). And, "[w]here an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009); *see also* Fed. R. Evid. 702 (expert testimony must be "based upon sufficient facts or data").

*Seamon v. Remington Arms Co., LLC*, 51 F. Supp. 3d 1198, 1212 (M.D. Ala. 2014). "Without an underlying basis of support, the 'expert's' opinion is only one of many possible theories and interpretations of the facts at issue, and is no more or less helpful than the trier of fact's own reading of the evidence." *Cooper v. Toshiba Home Tech. Corp.*, 76 F. Supp. 2d 1269, 1277 (M.D. Ala. 1999).

Even if an expert is qualified in a general sense, for an expert opinion to be admissible, the expert must articulate the basis for the opinion in a manner opposing counsel and the Court can assess for reliability. Thus, conclusory statements that something is true, possible, or expected do not suffice. *See Frazier*, 387 F.3d at 1265 (stating regarding the proferred testimony of a forensic scientist that,"[w]hile the expert's statement that the recovery of hair or seminal fluid 'would be expected' expresses an intrinsically probabilistic or quantitative idea, the probability it expresses is unclear, imprecise and ill-defined. And the basis for that probabilistic opinion is left unstated. Without knowing how frequently hair or seminal fluid is transferred during sexual conduct in similar cases–whether derived from reliable studies or based on some quantification derived from his own experience–it would be very difficult indeed for the district court (or for that matter the jury) to make even an informed assessment, let alone to verify that the recovery of hair or fluid evidence in this case 'would be expected.'")

**Dr. James Lauridson**

First, Dr. Lauridson's report falls far short of Rule 26(a)(2)'s mandatory requirements. By its express terms, Rule 26(a)(2)(B) requires that in the case of a witness retained as an expert, the party's expert disclosure must be accompanied by a written report that contains, among other things, "(i) a complete statement of all

opinions the witness will express and the basis and reasons for them" and "(ii) the facts or data considered by the witness in forming them."

Dr. Lauridson offers only a conclusory opinion regarding a crude diagram that he says corroborate the officers' version of events. He notes the general paths of the bullets per the autopsy report and the officers' claim regarding the position of Watkins' arm at the time he was shot and submits two crude (and inaccurate) diagrams, the second of which Dr. Lauridson says "corroborates the statements of the police officers." [Doc.24/Pg.68-70]

Dr. Lauridson does not state how he created the diagrams. No explanation or calculation of any kind is provided. Dr. Lauridson's opinion is little more than a speculative conclusion in picture form. Accordingly, Dr. Lauridson's testimony should be excluded. *See Jones v. Novartis Pharm. Corp.*, 235 F. Supp. 3d 1244, 1276 (N.D. Ala. 2017), *aff'd in part sub nom. Jones v. Novartis Pharm. Co.*, 720 F. App'x 1006 (11th Cir. 2018) ("Expert reports must include both 'how' and 'why' the expert reached a certain result, not just conclusory opinions. *Hamlett* [*v. Carroll Fulmer Logistics Corp.*], 176 F. Supp. 3d [1360,] 1365 [(S.D. Ga. 2016)]. The court in *Hamlett* concluded that it was "unacceptable to make a party wait, and thus be surprised, at a deposition . . . the defendants were prejudiced because they were denied, prior to the deposition, the full opportunity to digest [the expert's]

information and formulate their deposition questions based on the same.' *Id.*")

Even if Dr. Lauridson's report met rule requirements, his testimony regarding the shooting is due to be excluded, first on the qualification prong. While Dr. Lauridson is qualified from his work as a medical examiner to testify regarding the paths of the bullets through Watkins' body, Dr. Lauridson has no expertise that allows him to opine regarding shooting scene reconstruction or create accurate diagrams (of bullet paths or otherwise). Dr. Lauridson uses the limited facts he is qualified to opine upon (how the bullets passed through the body) to create, out of whole cloth, a crude and inaccurate diagram that supposedly corroborates the officers' testimony.

Because Dr. Lauridson provides no information regarding any methodology, let alone a reliable one, and is opining in a speculative and conclusory manner on cherry-picked facts using a crude and inaccurate diagram, his opinion also fails the reliability prong and the helpfulness prong, as an unreliable opinion does not assist the trier of fact. Further, Dr. Lauridson offers nothing that an attorney cannot argue from the known bullet paths and thus will not help the jury. Given the glaring lack of reliability and the likliehood that the diagram will have undue influence on the jury, Dr. Lauridson's opinion should also be excluded under Rule 403 because of the potential to confuse and mislead the jury and thereby prejudice plaintiff.

Plaintiff does not seek to exclude Dr. Lauridson's opinion regarding the cause of the injuries to Watkins' face. [Doc.24/Pg.70]

**Joseph M. Saloom**

The testimony of Saloom is due to be excluded for the same reasons Dr. Lauridson's shooting reconstruction opinion should be excluded. First, his report, like Dr. Lauridson's, is conclusory. Second, Saloom is not qualified to give the opinions he is offering. While Saloom would appear to have experience regarding crime scene investigation and documentation he, like Dr. Lauridson, identifies no expertise or experience regarding crime scene reconstruction. Nevertheless, that is the nature of the opinions he offers here. Therefore, his testimony is due to be excluded under the qualification prong.

Saloom's opinions are also due to be excluded under the reliability and helpfulness prongs. Because Saloom is not qualified as a crime scene reconstruction expert, he cannot offer reliable and helpful opinions regarding how the shooting likely occurred.

Further, like Lauridson's opinion, Saloom's opinions are speculative conclusions based on cherry-picked facts that are not reliable and would not be helpful to the jury. Saloom first opines that because Watkins bled out on the gravel, Watkins must have been shot on the concrete slab and then fallen into the gravel

driveway after being shot. [Doc.24/Pg.60] Saloom takes a single fact not in dispute that he is qualified to speak on, that Watkins bled out on the gravel, and, then, without explanation, jumps to the conclusion that Watkins was shot on the concrete pad and then fell into the driveway. Saloom does not explain how Watkins went from "standing" on the concrete pad to out in the middle of the driveway (or how Watkins' hat and other items got where they were found) (see below photo) and would not have the expertise to do so. He does not attempt to address the various questions the jury will be grappling with in this case, including whether Watkins' body was moved into the gravel driveway immediately after the shooting, as two witnesses have testified. In sum, Saloom merely packages Moody's claim (that Watkins charged him) as an expert opinion by extrapolating, without any expertise, from a single fact taken out of context. Thus, Saloom's opinion that blood on the gravel equals Watkins was shot on the concrete pad is neither reliable nor helpful.



Saloom's second opinion also concerns how the shooting occurred:

> While I agree that the bullet paths are from right to left, and downward, that does not necessarily mean that the deceased was not facing the shooter prior to the actual shooting. We have no way to determine the sequence of the shots fired by the Defendant. **If the deceased was advancing on the shooter, and the shot that struck the car was the first shot, the deceased would most probably have begun to turn away** and the second and third shots would have struck him in exactly as they did. We cannot know from the evidence we have as to what position the deceased was in when he got shot.

[Doc.24/Pg.61 (emphasis added)] Saloom identifies no qualifications that would make him an expert to testify regarding how a person reacts to a gunshot or whether his proffered speculative theory makes any sense as a matter of crime scene reconstruction. Further, Saloom does not state any basis for his opinion that Watkins "most probably" would have "begun to turn away" if the first shot was the one that hit the car and thus is not reliable.

Moreover, both of Saloom's opinions are merely jury argument poorly dressed up in expert clothing. As such, they would not be helpful to the jury. *See Frazier*, 387 F.3d at 1262-63 (stating that "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments").

Finally, even if Saloom's opinions were admissible, they should be excluded under Rule 403. Given Saloom's lack of qualifications, the speculative and

conclusory nature of his opinions, and the fact that his opinions can be argued by defense counsel during the trial, Saloom's opinions have little if any probative value and would be unfairly prejudicial to plaintiff.

**John J. Ryan**

Regarding police practices expert Ryan, plaintiff first and foremost seeks to prevent Ryan from assisting Moody on the facts. Ryan's report is full of his analysis of the factual record. While it is appropriate for an expert to testify to an opinion based on a disputed version of events, it is not appropriate for an expert to offer opinions regarding the facts, as Judge Kallon noted in another case in which Ryan was offered as an expert. *See Smith v. City of Huntsville*, No. 5:14-CV-00555-AKK, 2016 WL 5746216, at *4 (N.D. Ala. Sept. 30, 2016) ("To the extent that Smith seeks to rely upon her expert John Ryan's testimony as to when N.S. began choking, see doc. 116 at 11, the court finds that he is not a competent witness for these facts. Indeed, instead of relying upon a study or an autopsy, for instance, Ryan seeks only to reiterate his understanding of Dean's and Hughes's perceptions of when N.S. began choking. See doc. 96-14 at 59–60. Smith cannot hide Ryan behind the guise of "expert witness" in order to rephrase and alter Dean's and Hughes's testimony about their personal observations. *See Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989) (noting that "experts . . . are not 'fact

witnesses'")).

Additionally, Ryan should not be permitted to testify regarding the law or how the shooting occurred. *See Knight v. Miami-Dade County*, No. 09-23462-CIV-TORRES, 2014 WL 11813876, *8 (S.D. Fla. May 14, 2014) (stating that "police practices expert" cannot "testify regarding any ballistics, bullet projectile, or accident reconstruction issues" and cannot "testify, reference, or analyze any caselaw before the jury; the responsibility of instructing the jury on the applicable law is reserved solely for the Court.").

Beyond limiting Ryan's efforts to massage the facts and testify about the law or how the shooting occurred, plaintiff seeks to exclude the testimony of Ryan regarding a reactionary gap, a lag time during officer decision-making between observation of a threat and action. [Doc.24/Pg.36-37, ¶¶ 95-96] Ryan offers to testify that this time gap (length unspecified) can theoretically give "a false perception that the actual threat had passed at the time of the decision to use deadly force." [Doc.24/Pg.37, ¶ 96] Ryan offers no specifics regarding how this concept would actually apply to this case.

Ryan does not claim to be a scientist in this area. His qualifications are as a law enforcement professional. He offers some studies regarding the existence of a reactionary gap, but, because Ryan lacks expertise in this area of scientific study,

Ryan is not qualified to testify regarding an opinion about this theory in this case.

Even if Ryan could be qualified to testify about a reactionary gap in some other case, he does not offer any reliable opinion applicable to this case. The studies upon which Ryan relies address cases in which a subject is alleged to have spun so quickly that a shot at the front ends up being a shot in the back. *See T.D.P. v. City of Oakland*, No. 3:16-CV-04132-LB, 2019 WL 913840, at *10 (N.D. Cal. Feb. 24, 2019) ("Mr. Ryan, the plaintiffs' expert, disagreed that the reactionary gap existed based on the physics of the shots here. **The reactionary-gap studies explain why an officer who fires at a suspect's front actually hit the suspect's back: that result happens because a suspect can spin that fast**.") (record citations omitted) (emphasis added). Here, there is no claim by anyone that Watkins made any quick spin or similar fast move, and Ryan offers no expertise in crime scene reconstruction and does not even attempt to offer an opinion that a reactionary gap had any meaningful impact on the evidence here. Therefore, Ryan's opinion would not only be unreliable but also unhelpful to the jury.

Ryan's testimony is nothing more than an improper invitation to the jury to speculate that some sudden movement by Watkins led to a false presentation of the scene. Thus, even if his opinion was admissible, any marginal relevance would be substantially outweighed by the danger of unfair prejudice and should be excluded

under Rule 403.

## Conclusion

For the reasons stated above, the Court should exclude the testimony of defendant's experts as stated above.

Respectfully submitted,

s/ Henry F. (Hank) Sherrod III

Henry F. (Hank) Sherrod III
No. ASB-1200-D63H
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, Alabama 35630
Phone: 256-764-4141
Fax: 877-684-0802
Email: hank@alcivilrights.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notificattion of such filing to counsel of record.

s/ Henry F. Sherrod III